Good morning, Your Honors. May I please the Court? Hold on just a second, would you please? Let me get the case before me. Let me say for the record that the, on the calendar, the case of County of Imperial Treasurer, Tax Collector v. Stattmuller was dismissed. And now we go to the Ketab. All right? Good morning, Your Honors. May I please the Court? Dariush Adly from the Adly Law Group on behalf of the appellant, Ketab Corporation, which is also the plaintiff in the underlying case. I would like to notify the panel that I'm going to be sharing the 20 minutes that have been allotted with my colleague, Ms. Marina Manoukian. Make sure you speak up, Counsel. Thank you very much. Your Honors, this case is about information directory services provided to the Farsi-speaking community in Southern California. After the upheaval in the 1970s, a large number of Farsi-speaking people started immigrating to this country from Iran and neighboring countries. The client, Ketab Corporation, a client, started offering information directory services to that group beginning in 1981, a couple of weeks before Thanksgiving, when he arrived in this country. Shortly after, within a couple of weeks thereafter, he started offering these services. There are three components of those services that are relevant to this case. There is a telephone book directory called Yellow Page Iranian. There is the information directory, call-in directory service, which is called Markeze Etelat-e Iranian, roughly translating to Center for Information about Iranians. And finally, a call-in assistance phone number and the corresponding registration called 08. The 08 number had been significant to the Farsi-speaking community because it had been used in Iran until the 70s as the equivalent of R411 here. So when a Farsi speaker would see the 08, he would immediately recognize it as a call-in directory assistance number. That's the reason that the phone number, there's been an issue whether the phone number can be a trademark. Of course it can. 1-800-Flowers, 1-800-Go-FedEx. Same thing, when people see an 08 number, 080808, they think information directory. That's for the Farsi-speaking person. Let me ask you some questions. There's a number of issues that have been raised. So I want to talk to you about the trademark infringement and unfair competition claims, 1, 4, 6, and 7, and the district court's dismissal of those claims in the first complaint as to the Mizrani defendants. Ultimately, those claims appear to turn on likelihood of confusion and whether the alleged marks are protectable. Do you agree? Is that correct? The issue, the standard is whether we wrote down enough at the pleading stage to go forward with the case. Correct. The district court judge said that the areas of practice, the fields of endeavor, information directory services and legal services were so different that nobody would be confused by use of identical marks. But we alleged in the operative second amended complaint that the Mizrani defendants were using those marks in a competing way, competing with a subset of the directory services, the legal directory services provided by Kitab. In other words, they were making those numbers available to other lawyers, affiliate lawyers, other lawyers who would be compensated based on a referral fee. Okay. Because he didn't allow you to amend on that one. No, we did. The second amended complaint is the operative complaint in that case. That's right. Okay. Yes. And the key is that we alleged, Kitab alleged, that legal 08, which is how they identified themselves, if you click, if the user clicked on www.legal08.net, again, .net is the only time they use .net. They use .com for identifying their own services. People will be directed to www.findbestlawfirms.com. Again, it's competing directly. I guess my question is, are those factors enough to show confusion under the sleek craft factors for confusion, which is what we have to look at and what the district court would have to look at? Yes, they are. I mean, the allegation is that they are providing a competing legal directory service, so people, when they call in, they'll be directed to other law firms, unaffiliated with them otherwise, for special areas of practice. So that's what Kitab does. The reason I'm asking that is because now we have now seen how Claims 1, 4, 6, and 7 were unsuccessful on the merits. When you litigated those claims in the bench trial with the Mellie defendants, wouldn't it be futile? Doesn't that further support as to why the district court would have thought they were futile? And to now give you leave to amend those claims back from your original complaint, I'm just trying to figure out why we would do that. Well, the areas of the fields of endeavor, the business of the two defendants, are very different. The Mezzriani defendants are in the area of providing legal services themselves and in a competing way with the legal directory services offered by Kitab. The Mellie defendants were direct competitors of Kitab from the beginning. Beginning in 1981, when Kitab started offering these three branches of directory services, the Yale Page Iranian, Markezi Atalati Iranian, and the Call-in 08 number, in 1994, between 1981 and 1984, they were the only game in town. They were the sole provider of these services. In 1994, who comes onto the scene, Mellie, and what do they do? They immediately start using identical Yale Page telephone directory books, Yale Page Iranian and Markezi Atalati Iranian, and a phone number that is only one digit different, 8188080808. There's a lawsuit, there's a stipulated judgment, a settlement, and an injunction issued, and that's why we are here for the second case, because they violated that injunction. Why isn't our case Filipino Yellow Pages versus Asian Journal Publishing, Inc., outcome determinative here as to your trademark claims? Your Honor, the marks that issue, Yale Page Iranian specifically is focused on that. Filipino Yellow Pages is very careful to distinguish its finding and not overgeneralize it. For example, the Filipino Yellow Pages talks about surgical center, and there are other cases like park and flight. Why aren't we looking at similar marks here? In that case, we found Filipino was generic and not predictable, and Yellow Pages was also generic because it described the services being provided. I'm just trying to figure out, isn't that the same as your case here? Iranian is the group of people, and Yellow Pages describes the services provided. If I may explain, Your Honor. Filipino Yellow Pages itself says just because their two terms are generic, the combination is not necessarily generic, referring to park and flight, for example, California Cooler, Junior Chamber of Commerce. Those are all found to be valid. They were not overruled by this decision. In this case, we're not even talking about it. That's one of the things, if Your Honor has looked at our briefs, and I want to be specific about our opening brief for the Melody case, pages 56 to 62, and our reply brief in the Melody case from 40 to 47. It's replete with the mistakes and failures of the judge of the district court. One of them was a forced translation. Kitab does not use Iranian Yellow Pages, which would invoke Filipino Yellow Pages. They use a composite coined combination of a Farsi word and an English word. The English word Yellow Page in Farsi is Safahat-e-Zarab. They're not using that translation. They're using the English, which doesn't exist in Farsi, taking the plural out, making it singular, combining with the possessive A, and then adding the Iranian. So it's a unique combination. I understand that. I guess what case do you have in support of the proposition that mixed-language marks, which you're describing, make the mark non-generic? Referring to the case law that we have cited, especially, for example, McCarthy, Fifth Edition, and this is all in a brief, Your Honor. So, referring to McCarthy, Fifth Edition, Section 1242, stating that the combination of foreign and English words are protectable as a mark in the United States, referencing La Yogurt, Le Hot Rod, Das Snow Shovel, and El Hat. There's also persuasive cases from the TTAB itself, which is, again, let's see. It says 8 USPQ 2nd, 1408, and 1413, which is a 1988 TTAB decision, and plus a district court decision from New York, 818 F sub 635 at 636, which is a 1993 Southern District of New York. It says when a foreign article is combined with a term which is primarily a generic term only in English, the combination is protectable. That's also McCarthy. The district court misapplied, and remember, the district court extorted, basically, a forced translation, understand from Kitab's principle saying, what do you object to in terms of what the military defense are using? He said, yellow page, use of yellow page, Your Honor, and he said, say it in English. Well, the English is not what they were using. They were using the coin, unique coin combination. But McCarthy, what you're citing is a treatise. Is that what you're citing? That's not a case. That's a treatise. That's a treatise, but also the two cases that I cited, one from the Southern District of New York, which is the citation is 818 F sub 635 and 636, 1993, and then the TTAB decision, Trademark Trial and Appeal Board, which is a, and again, the key is that these terms were used exclusively, extensively. I don't think any of those cases referred to in the McCarthy treatise is a Ninth Circuit case. I was just hoping you might be able to provide some authority where they analyze these types of cases with the mixed, under the sleek craft factors. The Ninth Circuit precedents that I did cite, the three that I found, Park and Fly, California, these are all Ninth Circuit, California Cooler, and then Junior Chamber of Commerce. Those all found to be protectable. And this is, again, a unique combination, coin combination. It's not Iranian yellow pages. It's a change. It's altered. And it's acquired extensive secondary meaning by exclusive use in the market for decades to this day. So if I may go back, the judge misapplied the law, the standard. The judge misapplied the standard in allowing us to amend, both at the first stage in the Mastriani case and the first chance in the Melle case. And the judge then, again, in footnote eight, the judge gave a reason. The judge said, and let me actually go back to the footnote specific, footnote nine, I believe. This is footnote nine, which is an excerpt of the records 101, footnote nine. The judge said, the reason that I'm not going to allow Melle defendants to amend, again, this is at the first pass, is because they have been, because they're kept up to amend in the Melle case, is because they've had repeated opportunities, going back to the Mastriani case, to amend without success. But the judge lists, this is very important to note, the judge lists, he says, the vicarious contributory, he says the contributory infringement, vicarious infringement, and trademark dilution cannot be cured by an amendment. The judge deliberately or doesn't mention contract. Breach of contract was not pled, was not pled against Mastriani because it was not involved. And so it was the first opportunity the judge denied a key element of this case. The reason we're here is because the same parties, over the same issues, over the same conduct, litigated this issue in 1995. It reached a compromise, a settlement, a stipulated judgment in 1997. It was observed and adhered to for 17 years. Then in 2014, it was violated. So, of course, they come back to the court again. Of course they had a good case. I mean, they had to do that. Why wouldn't they? I want to talk to you about the 1997 settlement order and judgment that you have claimed is a contract. I guess first, do you really argue that you didn't have notice of the deficiencies of your contract claim when the district court ruled there was no contract as part of your intentional interference of economic relations claim that the court dismissed against the Mastriani defendants, it seems like, or didn't you know that at that time there was an issue with the contract claim that you should cure in your pleadings? If a cause of action is not challenged at all, in fact, they answered. The Medley defendants answered the complaint, the first amended complaint, and the second amended complaint. And each time they admitted that what we described as a settlement order, which was a contract and stipulated judgment, was in fact a contract. They attached a copy of the stipulated judgment to their answers, and then they adhered to that for 17 years. So, in other words, there was no challenge to it, and the judge was incorrect. The allegations of interference for the Mastriani case is that Mastriani interfered with the Medley defendants to observe this contract, to breach this contract. That was the interference that was alleged. Again, the judge was incorrect, as with many other things in this case. It was simply wrong. Well, it seems like from my review that the issue with your contract claim seems to be that you have never put forth any legal analysis as to why the 1997 settlement order is a contract. I guess, do you have any legal authority for that argument, or how did you properly allege that it was a contract? Well, okay. Again, they admitted that it was a contract in their answer. And let me just, if I may, if I may read. I mean, we allege a contract. They accept that, yes, it's a contract. It wasn't challenged. Now, if you went to the trial stage, yes. The Medley said it was not valid and enforceable in their answer. I think that's what they said. But they didn't file a motion to dismiss. They didn't file a motion to dismiss. And here's what it says. I know, but you would then have been on notice to flesh out why you thought, the support for why you thought that was a contract. And I'm not sure. But let me see. Let me just read to Your Honor. Maybe I'll be happy to answer more questions. It says, in 1990s, this is the second, the operative complaint, the second amendment complaint says, in 1997, the parties reached a settlement agreement, and the court entered judgment and permanent injunction orders incorporating the parties' settlement. That's what it says. And then defendants admitted that. And then the settlement order itself, the order by the court, says that per agreement of the parties, per stipulation of the parties, I'm entering this permanent injunction. In other words, it was very clear that there was an agreement in place. The agreement, exactly what it covered, in fact, the stipulated judgment referred to the marks as plaintiff's marks and identified the same marks that are issued here, identical marks, Yellow Page Iranian, Markez-e-Talat Iranian, and the confusingly similar 08 number, 8188080808, as opposed to 81890808. So the same issues were involved. When they're violated, of course, you come to court. I mean, that's what you do. The court should have given us, should have applied the standard which the court, this circuit has devised, which says, dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment. Well, of course, both in the Mastriani case, we allege they are competing with us as a legal directory of services. It's an arm of what we do. It's like comparing red apples to apples, not apples and oranges. In the Mellie case, for the contract case, well, if there were some pretty deficiencies, it could have been easily cured. I mean, this is a contract. We performed it, expecting them. It was upheld. It was adhered to. So I just don't see how the court observed Your Honor's standard in allowing, not allowing us, dismissing the key, gutting the case with prejudice, not allowing us to go forward. The judge had already made up his mind. I mean, again, going back to all the missteps on what the judge said. Just rapidly going down, I just want to make sure I ask you one question about the attorney's fees. After our case in Sun Earth and the Supreme Court's case in, I think it was, Octane, we have to give the district court abuse of discretion or review of her abuse of discretion in their attorney's fee determinations under the Lanham Act. And the district court had to find that this case was exceptional. It seems like the district court made a record in its written orders for the attorney's fees for both the Mizrani and the Mellie defendants. I guess why are the reasons in that order regarding the frivolousness of the Kames, especially in light of the district court's previous findings, why would we find them to be an abuse of discretion? Well, the Octane case, which is a 2014 Supreme Court patent case, my primary area is patent law, so that's been very prominent. It looks as if, and I know you've heard enough about this totality of circumstances. I don't want to belabor that point. But how is this case exceptional given what Kitab had, which is armed with a stipulated judgment, an agreement, which was between direct competitors for the identical marks, identical market, identical conduct, when it's violated after 17 years. Why is that case exceptional? The fact that the judge did not adopt or apply your standard doesn't make it right. In both cases, right off the bat, I'm not going to let you amend. The key portions, why? Why not let you amend, go forward, yeah, I'll give you the chance to amend, to explain. At trial, he stopped us after the first day. I'm not going to let you amend. The comments are, I mean, this is one of those cases which, if it's allowed to stand, it's going to cause a lot more work for you guys because it's simply wrong on so many fronts. And if you have any questions, but otherwise, I'll reserve the rest of my time. We're not all guys. What's that? We're not all guys. I meant that generically, sorry. Go ahead. Good morning, Your Honors. May it please the Court, my name is Yolanda Slaughter, and I represent the Law Office of Mezzriani & Associates and Rodney Mezzriani, who's present here today in court with me. We would ask that the Honorable Court affirm the District Court's orders that are being challenged here today for the following reasons, and then I'll go into detail about each of the claims and why the Court properly dismissed the claims. As it relates to the trademark infringement claims, the District Court properly found that confusion was unlikely in light of the totally unrelated services that the Mezzriani law firm and the Yellow Pages provide, and based upon this Court's decision in Murray v. Cable, NBC, the Court found that confusion would be unlikely and, as a matter of law, dismissed those claims. Let's talk about what I was asking a lot of questions about, and that was on the leave to amend. Under cases for us like Eminence Capital v. Aspion, this Court has held that leave to amend should be given pretty liberally. I think you understand that concept in the Court. They're held that dismissal with prejudice without leave to amend is not appropriate unless the complaint could not be saved by amendment. My question is for you. Shouldn't the District Court have given CATAB at least one chance to amend its trademark and unfair competition claims under our Court's law? I don't think so, Your Honor, not in this case. I think that amendment would have been futile here. There's just no escaping the fact that the services that are provided by the appellant CATAB, a yellow page of services, and the Mezzrani law offices are just totally different services, and there's just no way around that. I mean, for CATAB to be able to allege that the Mezzrani law group is also a legal directory services, I mean, it's just implausible, and that certainly, even if the Mezzrani law group- I mean, it was referred to by the counsel, addressing that court's prior holding as to why there would be, when the court said there would be no confusion. Why couldn't the claims have been saved by that? I don't think those claims would have been saved. The CATAB appellants did allege that the Mezzrani law group was competing with it by providing legal directory services, and I think, as we all know, most law firms and most lawyers, they refer cases to others if it's a practice outside of their area. That does not rise to the level of a competitor competing with a yellow pages directory service. It's still a law firm that provides legal services, and that's what the district court did. The district court looked at the allegations in the complaint and saw that these were allegations against a law firm. CATAB, the appellant here, is alleging that a law firm was causing confusion with it by providing legal directory services, and, Your Honor, we just don't think those claims would have been saved with the amendment. There was a motion for reconsideration filed asking for leave to amend, and there was nothing put before the court for the court to provide any relief on that motion for consideration. Do the local rules require a proffer of the amended complaint so that the court can see what the amendment would be? I don't know if it requires a proffered amended complaint, but it would certainly require some set of facts as an explanation as to what those newly discovered facts would be and also how come those newly discovered facts were not presented to the court at the time of the opposition on the motion. Well, you don't have to show the newly discovered facts in order to amend. You can just allege new facts that you hadn't thought of. That may be the case, Your Honor, but I think it would still require the appellant to explain why those newly discovered facts had not been presented to the court prior to the hearing in their opposition to the motion to dismiss. And in the motion for consideration, there's just nothing there for the court to provide relief on. There's a declaration attached that says I am the attorney for the appellant and I make this declaration in support of the motion for reconsideration and absolutely nothing else in support of that motion for reconsideration. For the intentional interference with economic relations claim, why isn't the 1997 settlement order judgment a contract? It seems like it was entered into by stipulation of the parties and I'm trying to figure out why that doesn't show the consent of the parties in reaching the agreement. Well, the Benzeriani law defendants were not a part of that settlement order. My clients didn't even know the CAB appellants or anyone else at that time. And we agree with the district court that a settlement order is not a contract. So as far as the tortious interference claim, we also believe the district court got it right. There was just no allegation of any real prospective relationship that was advantageous to the plaintiff. It's just not plausible that a law firm using a domain name or a telephone number would just cause confusion and disrupt the business of the Yellow Pages. And so we'd ask that this court affirm the district court's order on the tortious interference claim as well. As it relates to the dilution claim, Your Honors, that claim is just baseless. These catap marks do not rise to the level of a famous mark. These are not marks that are like Tiffany or Polaroid or Kodak or Budweiser beer. So we believe that the district court got it right on the dilution claim as well and properly dismiss those claims as well, Your Honor. As it relates to the court's order on the motion for attorney's fees, there was no abuse of discretion there. Let's talk about that because I do have a lot of questions about that particular decision. I guess how is this case exceptional, especially when Qatar did not pursue the claims against you or your client past the motion to dismiss stage? I mean, isn't this just the type of action, a party bringing claims and amending a complaint twice, just typical of an action that shouldn't necessarily be deemed as exceptional for fees, especially in light of the amount of fees here? I would disagree with that, Your Honor. I think this is an exceptional case. Not only was there a complaint filed that implausibly alleged trademark claims, but there were three First Amendment complaints filed. And in those First Amendment complaints, appellant realleged claims that had already been dismissed by the court with prejudice. And not only did it reallege these claims that were previously dismissed with prejudice by the court, it also included three additional claims for which leave to amend was not granted on. So there was several missed deadlines, missed motions, oppositions to motions to dismiss. There were leaves to amend that were groundless that were brought. There were ex parte relief motions brought. There were just several motions brought that the court found that were baseless, and it caused prejudice to the Mezriani defendants. They had to repeatedly keep defending against these claims that just really were baseless in fact. But if the basis is frivolity, if the basis of the judge's ruling is frivolity, and yet the thing goes to trial, how can it be frivolous if it's good enough to go to trial? That was on the co-appellee's case, Your Honor. I think on our claims that those claims were dismissed at the motion to dismiss level. And one other thing I'd like to point out, in the second amended complaint, appellant alleges that there were trademark infringement claims against the Mezriani defendants in the second amended complaints, and there are not. The second amended complaint does not contain any infringement claims against the Mezriani defendants. It looks like the district court did not have the benefit. It seems like a lot of these are the same issues. But the district court did not have the Sun-Earth case. It had not been decided yet in making its decision on the fees. And so is there a reason that we should consider maybe remanding so the court can reconsider his attorney fee decision based on that new guidance? I don't think so, Your Honor. I think that this is still an exceptional case. This is a very different case. And again, a lot of pleadings were brought that did not support the theories of the case, and they were just groundless claims that were brought. I'll rest, unless Your Honor has anything else. Is your co-counsel? Good morning, Your Honor. Ben Davidson for Appleease, Mellie Yellow Pages, Studio Cinegraphic, and Mr. Ali Luminati, who is here with me in court today. After the law firm, Mezriani Law Group, was dismissed from the case, Kitab and its counsel kept on going and took us through a trial on three very frivolous trademark infringement claims. And I would just like to address a few points that were raised by Your Honor's questions. First, the issue of the settlement order. We said at page 66 of our brief that Kitab waived any challenge to the district court's analysis of the settlement order because it's not like the judge just ignored the settlement order. He analyzed it, and he did that at the- Didn't you enter into it and agree not to infringe on Kitab's alleged marks? So, actually, no. It's not a contract. It's simply a settlement order. It's a permanent injunction entered by stipulation. And it's been mischaracterized, and that's really the point. Both parties agreed that the order could be entered. The parties agreed that an order could be entered. Isn't another word for contract an agreement? No. No, Your Honor. So it's an agreement. The breach would have been if we said, all right, we agree the court can enter this order, and then we welched on that. But the order that goes into effect is a determination by a judge. It's an injunction. It's not you can't go to court and say, hey, you violated the injunction, so pay me damages. You have to go to the court and say they violated this injunction. And so what do you have to do to do that? You have to show, and this is the point of the waiver, the district court at Exeter's record, page 2108. He said the settlement order merely prohibits plaintiffs from infringing plaintiff's marks. And we didn't infringe. We had a whole trial on that. So before you go into the court and you say the injunction's been violated, give us contempt damages, you have to make sure under this court's yellow cap case, which I know Your Honor's very familiar with, you have to know that 17 years later you have valid marks to pursue, which they didn't. You have to know that my client used the supposed marks in an infringing manner, which he didn't. I mean, one of the supposed infringements is the fact that my client uses the words yellow pages for Iranians in a sentence. They've been pretending, and they're pretending now. That's a trademark infringement. But the judge, I understand what you're saying, but the judge never really provided any legal analysis on whether the settlement order was a contract. You're providing some of it now, but I don't think the judge did other than what you just mentioned right there. Did he? Well, yes, he did, because it was raised in the context of a motion. I'm sorry, it was raised in the context of a motion for judgment on the pleadings. Show me or write to me where the legal analysis by the district court took place. So in the court's ruling on the motion for judgment on the pleadings, the court noted that the breach of contract claim was not properly alleged, that there were deficiencies in it, that they didn't allege performance. What's the performance on a settlement order? They didn't have a theory of performance. They kept changing that. They didn't allege breach properly. They didn't allege damages. And so, actually, that was all admitted in the opening brief. Kitab admitted in the opening brief that they hadn't played the elements of a breach of contract. But the court had already told them months earlier in connection with Mestriani, look, you haven't alleged the elements of a breach of contract. Now, Kitab says, well, we admitted it was a contract. And this is all in our brief. We denied each and every time that it was valid and enforceable, as Your Honor pointed out. So that's no excuse for saying a month before trial, you won't leave to put in a whole new theory that we haven't had discovery of, that we would have been prejudiced. So, Your Honor, to answer your question, that's the analysis. You have a claim. You want to pursue a claim for a breach of contract. Well, you can't try to change the theory a month before trial when we haven't had discovery of what the theory is. We would have been prejudiced. That's the analysis. I want to ask you about attorney's fees. I have a number of questions for you, especially on the attorney's fees issue, and specifically the finding of the attorney's fees against Kitab's counsel personally under 28 U.S.C. 1927. Right. That statute requires a finding of bad faith, at least as I understand it. And here, I'm going to ask the same question I guess I asked of Ms. Slaughter, but it's more important, I think, for you. Wasn't Kitab's counsel at most frivolous? I mean, how did Kitab's counsel's action constitute bad faith? It seems like it may be an extraordinarily harsh penalty against Kitab's counsel given the large amount of attorney's fees. Well, I think the district court – let me answer that in two parts. First, in terms of the actual finding, we cited in our brief two cases, In re peoro, which says that you don't need to use the words bad faith in order to sanction an attorney. You can use words, for example, undoubtedly unmeritorious. And here, the court used words like that, that they continue to litigate their groundless action, that they didn't raise a culpable claim. So that's in re peoro and also in re acros, that you don't need an express finding of bad faith. But in terms of what the evidence shows, that acros says you need to have evidence of recklessness. That's the standard. Was it reckless? They said they had a famous mark. But it was only used with Iranians in Los Angeles. That's not famous under the Trademark Dilution Act. It's not famous because it's not known to the general American consumer. That's just frivolous, and they knew it. They knew it because the judge told them. He dismissed it once, and they kept on pursuing the claim. And the only real reason for it, Your Honors, is because my client really can't afford to litigate. That's the elephant in the room. The other claim that we went to trial on, they said they had a claim that my client infringed the telephone number or this registered design mark. We told the judge, there is no evidence on the exhibit list that my client used the mark himself. They said we were living in self-inflicted ignorance. That's at supplemental excerpts of record at 278, because we hadn't done a good job taking discovery. It wasn't ignorance.  We went to trial. We prepared for trial, interviewing all these witnesses to know, you know, what are they going to say when they show up about this mark? It was a bogus claim. And then on the two generic phrases, you know, the settlement order, again, I go back to the judge's analysis. The settlement order says don't infringe these marks. It didn't say if 20 years later, 17 years later, you're generic, everybody uses them. The evidence is overwhelming. Katov's own CEO said it's a type of book. Five, six different companies use it. He advertises for them as Yellow Pages of Toronto. Let me ask you this. I'm sorry. Also, you know, as to the fees, is it clear that the district court wanted to impose the whole amount, I guess it was $292,000 against Katov's counsel personally? I'm not sure it's clear that the whole amount is against counsel, at least from my reading of it. How do we know what portion of the total is excess under 1927? I mean, shouldn't only the excess be held against Katov's counsel personally? Right. And this is what we cited in our papers, the Blixeths case. It says if the entirety of the case was frivolous from the beginning,  The judge explained in detail how every one of the claims. He never made a conclusion regarding that. I mean, it's not clear to me, but maybe because you lived it, you think it is clear to you. But from the papers, from the ruling, he goes through a lot of what happened. But do you think that part is clear? Well, if you read the very first paragraph of the order and the very last paragraph in what he orders as attorney's fees against both Katov and his counsel, there's only one way to read it. And as this court pointed out, the standard of review here is abuse of discretion. Did the trial court abuse his discretion in holding not only Katov, but the lawyer who concocted these frivolous, baseless claims and litigated them for two years to say you can't use yellow pages for Iranians in a sentence because when you say that, it's a yellow page of Iranians, every Iranian. And from their own witness, that was admitted. I mean, he saw everything in the record we're talking about. He made credibility determinations. He saw just how baseless this claim was when it got to trial. And I think on that record, you can't say he abused his discretion. I would like to address Your Honor's question whether because the standard has changed, and Katov, by the way, didn't address the relevant standard in his papers, you should remand the case back to the trial court. That would be a huge win for Katov and his counsel because, you know, again, it's just more litigation that a small yellow pages company cannot afford. It's more delay. They didn't even address the right standard. But I would say that the judge applied the higher standard. The judge applied the bony standard, which is more rigid. It's groundless, vexatious, unreasonably pursued. He found all of these claims, every single one, groundless, vexatious, unreasonably pursued. Based on his findings, do these claims under the new standard stand out from others, under Octane, under Sun-Earth? Of course they do. I mean, if you have five claims, all of them are vexatious, unreasonably pursued, supported by no evidence except for misdescribing a settlement order, claiming it's a contract, and then saying that it's somehow, you know, it's an excuse to go sue someone who doesn't infringe without checking the boxes. Hey, do we still have valid marks? Are they using it in a manner that's likely to confuse? You know, then there wouldn't be a, you know, I think courts haven't been, this circuit hasn't been remanding every case back to the district court because the standard is lower now and it shouldn't be in this case. If I could address this argument they made in the reply brief about a lot of yogurts. I think you're out of time. Oh, I'm out of time. Okay, Your Honor. Thank you very much. We submit it on the papers. Thank you for your patience. There's no time left for the appellant. No time? The case is submitted.
judges: Bea, Murguia, Molloy